NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RONALD DESANTIS, MATT SETSER, SHAWN DICKMYER, WILLIAM BRADLEY FREEMAN, SCOTT FACTOR, SCOTT INGENTO, AARON REEVES, ANTHONY HOBBY, DWIGHT LANKART, RICHARD FORTUNA, and PAUL VLADYKA, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>SNAP-ON TOOLS COMPANY, LLC, SNAP-ON CREDIT, LLC, and SNAP-ON INCORPORATED,<br><br>  Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 06-cv-2231 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court by separate applications of Class Counsel, McElroy, Deutsch, Mulvaney & Carpenter, LLP ("MDMC") and Marks & Klein, LLP (M&K), for approval of certain costs and expenses to be paid by defendants (collectively "Snap-on") pursuant to the Settlement Agreement entered into on May 12, 2006 and this Court's Order and Opinion approving the Settlement Agreement, entered on October 27, 2006 (the "proposed costs"); and upon defense counsel's objections to certain of the proposed costs on behalf of Snap-on. A hearing on Defendants' objections to the proposed costs was held by this Court on December 22, 2006. For the reasons set forth below, the Court **denies** the following expenses submitted by M&K: requested reimbursement for services rendered by Marguerite Broussard, Esq., Richard Fiederlein, for one-half

of the fees owed to Anthony Granese, for the costs of Michael Marron's deposition transcript, for extra costs in the form of disbursements in the amount of $3,027.03, and for the costs of website maintenance. This Court also **denies** MDMC's request for reimbursement for one-half of the fees owed to Anthony Granese. The Court **grants** MDMC's request for reimbursement of the payment to its valuation expert. The Court **grants** interest on the fee award for the six-day delay following this Court's October 27, 2006 Order and interest accruing on the fee award for the sixty-day delay following the August 28, 2006 fairness hearing.

## I. BACKGROUND

Upon application of Class Plaintiffs, this Court entered an Opinion and Order on October 27, 2006 approving the Settlement Agreement and Class Counsel's application for attorneys' fees and expenses. A more detailed summary of the Settlement Agreement is recounted in the October 27, 2006 Opinion and is incorporated here by reference. Stated generally, the Settlement Agreement provides for both monetary and non-monetary benefits to the class of former, current and prospective Snap-on franchisees. Additionally, the Settlement Agreement provides for payments to representative Plaintiffs as well as Incentive Awards to former franchisees who retained counsel on or before April 18, 2006.

The unresolved issues remaining in this case are (1) Snap-on's objections to some of the expenses submitted by Marks & Klein, LLP ("M&K") and McElroy, Deutsch, Mulvaney & Carpenter, LLP ("MDMC"); and (2) the proper allocation of the fee award between Class Counsel - M&K and MDMC. The Court will address Snap-on's objections in this Opinion and the accompanying Order. The issue of the allocation of fees between class counsel has been referred to mediation by consent.

## II. DEFENDANT SNAP-ON TOOLS' OBJECTIONS TO EXPENSES SUBMITTED BY CLASS COUNSEL

Stated broadly, Defendants object to expenses submitted by Class Counsel because they either (1) are not related to this class action; or (2) are actually fees owed by Class Counsel to co-counsel, improperly classified as expenses in order to avoid having to share the fee award.

### A. M&K's Request for "Co-Counsel" Fees Owed to Marguerite Broussard

Snap-on objects to M&K's request for reimbursement of $28,136.89[1] in fees allegedly owed to its "co-counsel" Marguerite Broussard. Snap-on objects on the grounds that Ms. Broussard has had no involvement in this litigation, has never appeared in this or any other class action proceeding and has not signed any pleadings on behalf of the class. Snap-on argues that the documents submitted by M&K to support this expense are "paltry." Specifically, they include emails from Ms. Broussard regarding the work she did for several individuals, some of whom are not even class members because they opted out of the settlement.

Snap-on further argues that even if Ms. Broussard performed work for M&K in connection with this lawsuit, she would have to be compensated from M&K's fee, not reimbursed by Snap-on as an expense of litigation. See Sutton v. Bernard, 446 F. Supp. 2d 814, 819 (N.D. Ill. 2006); Anderson v. Conley, 206 N.J. Super. 132, 150-151 (Law Div. 1985); Estate of Vafiades v. Sheppard Bus Serv., 192 N.J. Super. 301, 314 (Law Div. 1983) (all holding that co-counsel and/or local counsel's fees should not be paid by defendants as an expense).

MDMC submitted a letter regarding these issues so as not to be "complicit in the fraud that

---

[1] Originally, M&K sought reimbursement of $63,338.38 for the monies owed to Broussard; however, that figure was reduced to $59,169.76. Subsequently, M&K stated that the reimbursable amount due to M&K is $28,136.89 due to the fact that Broussard's work on clients who opted out of the settlement was included in the original figure. These voluntary reductions occurred only after objections were made.

M&K is attempting to perpetrate upon this Court." See MDMC's December 3, 2006 Letter. Specifically, MDMC states that it was never advised that Broussard was under retainer and that MDMC's contacts with Broussard were limited to two brief interactions. MDMC states that the first contact it had with Broussard was in March-April 2004, pertaining to the arbitrations ordered by Judge Hochberg. MDMC requested and Broussard submitted a Declaration regarding the issue of how Snap-on's arbitration clause negatively impacted prior litigations. MDMC asserts that it's next and only other contact with Broussard was during July-September 2005, regarding the Lankart arbitration. During that time, MDMC contacted Broussard about potentially using her clients in an arbitration. MDMC ultimately never used Broussard's clients for the arbitration. MDMC notes that Broussard never submitted bills for her assistance in either of these two instances. Further, MDMC states that it did not expect to provide compensation to Broussard because MDMC does not pay fact witnesses.

In response, M&K contends that Broussard was "instrumental" in the Lankart arbitration, providing evidence and guidance to Class Counsel. M&K argues that because Snap-on required Ms. Broussard's clients be included in the class, she should be compensated for her work performed in their individual cases as a class expense. M&K takes this position, arguing that Broussard's work is a class expense, even though M&K concedes that "clearly [Broussard] was not acting as class counsel." Transcript of December 22, 2006 Oral Argument Hearing at 15:14-16. Further, M&K asserts that Broussard "would consult M&K from time to time" regarding issues related to the class action and the status of her clients' individual cases. However, no bills have ever been submitted by Broussard. To support these claims, M&K submitted emails exchanged between Ms. Broussard,

Mr. Marks and MDMC, indicating her involvement in obtaining information and witnesses for arbitrations. Additionally, M&K relies heavily on Ms. Broussard's email listing her hours performed for various clients and a declaration from Broussard, summarizing her work in representing Snap-on franchisees. However, as this Court noted during oral argument, these arbitrations had little or nothing to do with this class action.

It is the finding of this Court that M&K's request for reimbursement of $28,136.89 in fees allegedly owed to Marguerite Broussard as an expense is denied. First, the Settlement Agreement provides that "[s]hould any counsel other than class counsel petition for an award of attorneys' fees, expenses or costs resulting from the pending litigations or the settlement agreement, class counsel will cooperate with the corporate Defendant's counsel in opposing any such petition." This clause indicates that the parties agreed that any additional claims for legal fees would be paid out of the original $13 million fee award. Thus, if Ms. Broussard performed work in connection with the class action, then it is proper that she share in the $13 million fee award and that her fee should not be paid as an expense.

Additionally, M&K has never submitted *any* bills from Ms. Broussard, showing the work she allegedly performed on the class action or in conjunction with the class action. This lack of documentation alone is sufficient grounds to deny this expense because, as Defendants correctly note, the burden is on Class Counsel to show entitlement to the expense. Silverberg v. People's Bank, 23 Fed. Appx. 46, 49 (2d Cir. 2001); see also In re Fine Paper Antitrust Litig., 751 F.2d 562, 596 (3d Cir. 1984). Finally, this Court is very troubled by the fact that M&K has repeatedly reduced the amount allegedly owed to Ms. Broussard from approximately $68,000 to $28,000 when

challenged by Defendants. This fact coupled with the total lack of supporting documents and the statements offered by co-counsel, MDMC, casts a pall over M&K's entire application. The Court has serious concerns as to M&K's credibility. For these reasons, Ms. Broussard's fees may not be paid as an expense.

### B.     Reimbursement of Fees Owed to Anthony Granese

Snap-on objects to (1) M&K's request for reimbursement of $29,970.12 in fees to "co-counsel" Anthony Granese; and (2) MDMC's request for reimbursement of $30,000 in fees to "local counsel" Granese. Snap-on takes the position that Granese's services are legal services that cannot be compensated as an "expense," but rather, must be part of the fee award. See Sutton, 446 F. Supp. 2d at 819-20; see also Barneby v. E.F. Hutton & Co., 130 F.R.D. 679, 683 (M.D. Fla. 1990). In support of this proposition, Snap-on cites two New Jersey cases, Anderson, 206 N.J. Super. at 150-51 and Estate of Vafiades, 192 N.J. Super. at 314, that prohibit treating local counsel fees as an expense.

M&K does not dispute that the "co-counsel" fees owed to Granese are to be paid out of the fee award and are not an expense. In contrast, MDMC attempts to distinguish the cases cited by Snap-on, arguing that they were cases dealing with contingent fees and a common fund, unlike the case here. However, MDMC cites no law supporting the point that local counsel or co-counsel fees should be reimbursed as an expense and not paid out of the awarded attorneys fees. MDMC further argues that because the Granese law firm was not listed as Class Counsel it cannot be compensated from the fee award and cannot seek a lodestar multiplier. Finally, MDMC argues that the amount owed to the Granese firm was not contingent and thus is an expense incurred by MDMC.

It is the finding of this Court that Class Counsel's requests for reimbursement of Mr. Granese's fees as an expense are denied. While the Court recognizes that Mr. Granese's work is well-documented, unlike Ms. Broussard's work, Mr. Granese's fees must nevertheless be paid out of the fee award and are not reimbursable as an expense.

### C.   M&K's Request for Reimbursement of Disbursements From Other Cases in This Litigation

#### 1.   Services Rendered by Richard Fiederlein

Snap-on objects to M&K's request for reimbursement in the amount of $15,000 for "expert" services rendered by Richard Fiederlein.[2] Snap-on argues that Fiederlein, a former Snap-on manager who sued Snap-on years ago, did not perform any services in relation to this action and cannot be owed compensation on that ground. Snap-on points to Fiederlein's deposition testimony, wherein he stated that he was not being compensated for the services he performed for M&K and also, that he was not involved in the class action lawsuit.

M&K responds that this testimony is taken out of context. M&K has since filed a Supplemental Affidavit of Gerald A. Marks and Declaration of Richard Fiederlein to support the $15,000 allegedly owed to Fiederlein. Further, M&K asserts that Fiederlein consulted with Class Counsel with regard to the formation and prosecution of the class action allegations, providing

---

[2] Snap-on also objected to M&K's request for reimbursement for "expert" services performed by Dr. Richard Olsen in the amount of $2,500. However, in a letter dated December 8, 2006, M&K stated that "[d]ue to the inability to sufficiently track the payments made to Dr. Olsen for work done on the class action as opposed to on individual matters, we simply withdrew the request for the expense." Based on this fact, this Court need not consider Snap-on's objection to this expense.

substantial amounts of documents and information to M&K. However, as Snap-on points out, there is no documentation to support this expense. Specifically, no time records or invoices have been submitted by Fiederlein. M&K responds by saying that there is no documentation related to this expense because it was a "handshake deal."

It is the finding of this Court that Snap-on is not obligated to pay $15,000 allegedly owed to Mr. Fiederlein because this expense has not been adequately documented. As stated above, it is the burden of the party seeking payment of the expense to show entitlement to the expense. M&K has not satisfied this burden and accordingly this request is denied.

2.   Disbursements Made in Arbitrations

Snap-on objects to M&K's claim to reimbursement for disbursements made in unrelated arbitrations. Specifically, Snap-on objects to: (1) $3,027.03 in expenses allegedly unrelated to the class action; and (2) an expense for "Shorthand reporting service Taylor and Freidberg (Marron)," in the amount of $727.50[3], allegedly from an unrelated arbitration, Snap-on Tools Co., LLC and Snap-on Credit LLC v. Michael Marron.

First, with regard to the $3,027.03, M&K contends that it forwarded this sum to MDMC for expenses related to the class action. M&K asserts that it is entitled to this expense, even if MDMC characterized it as money spent on "non-class expenses." At oral argument, counsel for M&K attempted to explain the origin of this dispute. M&K and MDMC agreed that each firm would be responsible for its own expenses and would not reimburse the other for any expenses incurred.

---

[3] Originally, this cost was for $1,455; however, M&K withdrew half of this request when it realized that it had included the same expense twice.

However, M&K argues that contrary to this agreement, M&K orally agreed to allow MDMC to apply M&K's portion of the fees to the expenses MDMC incurred in settling a related arbitration. MDMC later advised M&K that $3,027.03 of the total sum applied to the arbitration was for an individual arbitration and not for a class action arbitration. Now, M&K attempts to recover this $3,027.03 on the grounds that M&K believed the $3,027.03 was being spent on class action expenses and, thus, M&K "shouldn't suffer the detriment of that because the class action expenses exceeded, far exceeded [its] half of the class action expenses." Transcript of December 22, 2006 Hearing at 34:11-14.

It is the finding of this Court that M&K's request for reimbursement of $3,027.03 in expenses is denied. Essentially, M&K does nothing to show that this expense is properly reimbursable as an expense related to the class action. M&K only asserts that M&K should not have to make this payment because it didn't know that MDMC was applying this amount to a non-class action arbitration. This argument is entirely unpersuasive in establishing that Snap-on should be held responsible for this expense when it has not been proven that this expense is related to the class action.

As to the Marron transcript costs, Snap-on contends that this expense is not reimbursable because it was paid in connection with Marron's individual arbitration and not part of the class action. M&K argues that the expenses related to the Marron arbitration are recoverable because even though Marron was substituted out as lead plaintiff and his claims were pending before the American Arbitration Association, he nevertheless remained a class member, and thus, expenses relating to his arbitration are recoverable.

It is the finding of this Court that the transcript costs associated with the Marron arbitration are denied because they were incurred in relation to Marron's individual arbitration.

### 3.  Reimbursement for Website Maintenance

Snap-on objects to M&K's claim to reimbursement for $1,338.75 to Jill Golden, administrator of www.snap-onfranchisefraud.com, the website M&K operated to market its services, attract potential Snap-on dealer clients and to allegedly collect information to prosecute this action. Snap-on argues that M&K referred to this expense as "ADVERTISING," and as such it is not recoverable as an expense. See Gray v. Romero, 709 F. Supp. 325, 327 (D.R.I. 1989); see also Ramos v. Lamm, 632 F. Supp. 376, 384 (D. Colo. 1986) (both holding that expenses related to costs of generating publicity are not recoverable).

M&K argues that the website was not used for generating publicity, but rather, was used to gather information which was ultimately used in the class action. M&K cites In re Safety Components Int'l, Inc. Sec. Litig., 166 F. Supp. 2d 72, 101 (D.N.J. 2001) and Smith v. Daimler Chrysler, No. 00-6003, 2005 U.S. Dist. LEXIS 25116, *13 (D.N.J. Oct 24, 2005), arguing that the operation and maintenance of a website is a reimbursable expense. These cases do little to support M&K's position for two reasons: first, it is not clear that these cases stand for the broad proposition that the operation of websites is always a reimbursable expense. Second, M&K fails to respond to Snap-on's argument that the cost of generating publicity is not a recoverable expense.

It is the finding of this Court that the costs associated with operation of the website are not reimbursable as an expense. This expense must be denied because M&K has not satisfied its burden of showing that this expense was incurred as a class action expense and not as a publicity or

advertising tool. The fact that M&K continued operating the website throughout the class action does not establish that the website was not a marketing tool or a device to attract clients.

### D.  MDMC's Request for Fees of Valuation Expert as an Expense Incurred for Benefit of Class

Snap-on objects to MDMC's request for reimbursement of $26,727 in fees paid to Gary M. Karlitz, the expert it retained to place a dollar value on the business changes agreed to by Snap-on as part of the settlement. Snap-on argues that this expense is not recoverable because the valuation was not a necessary expense. To support this position Snap-on cites cases which state that in approving a class action settlement district courts do not need an exact figure as to the value of the settlement's non-monetary benefits. See O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 302 (E.D. Pa. 2003) (citing In re the Prudential Ins. Co. of Am., 962 F. Supp. 450, 540-541 (D.N.J. 1997) and Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1303-04 & n.5 (D.N.J. 1995). Based on this case law, Snap-on contends that the cost of the valuation is not a necessary expense and, thus, Snap-on is not obligated to pay it.

In response, MDMC argues that the report was reasonable and necessary to inform the Court of the total benefit to the Class. Further, MDMC notes that this Court relied upon the expert's valuation in the Opinion approving the settlement. See Oct. 27, 2006 Op. at 6.

It is the finding of this Court that the fees paid to the valuation expert are compensable as an expense because the Court relied upon the valuation in its opinion approving the Settlement Agreement and this information made a difference in the overall settlement. The Court notes that as the number of class actions increase, the Court must be cognizant of potential criticism that can come from attorneys and courts in these large fee awards - where individuals only look like they are

getting a small amount compared to the total amount. Thus, it is very important that the overall value of the settlement be well-established and documented. In this case, the valuation expert's opinion had a great bearing on the Court's level of comfort in approving the settlement and awarding the fees to Class Counsel and, thus, it is a reimbursable expense.

### E.     MDMC's Request for Interest on the Fee Award

MDMC argues that it is entitled to interest on the fee award due to Snap-on's error in providing an incomplete list of the names and addresses of Class Members. Specifically, MDMC contends that due to Snap-on's error, the payment of the fee award was delayed by 60 days. Additionally, there was a six-day delay when Snap-on refused to place the fund in escrow accounts pursuant to this Court's October 27, 2006 Order. Based on these delays, MDMC seeks an award of $124,586.30 ($1,887.67/day) for the interest accruing during the 66-day delay. The parties all concede that the 60-day delay, while perhaps caused by a mishap on behalf of Defendants, was an unintentional consequence of an office error.

With regard to interest on the fee award accrued during the six-day delay, it is the finding of this Court that Class Counsel's claim for interest should be granted. Class Counsel should properly be awarded interest in order to compensate the attorneys "for the delay in receiving payment." McLendon v. Cont'l Group, Inc., 872 F. Supp. 142, 159 (D.N.J. 1994). This six-day delay was solely the result of Defendants' failure to abide by this Court's order. Snap-on unpersuasively argues that it believed it did not have to place the fee award in escrow until after the Court has determined the proper allocation of the fees between Class Counsel. It was this Court's intention, in approving the Settlement Agreement and $13 million fee award, that the fee award be placed in

escrow so as not to impose unnecessary pressure on the Court to discern the proper allocation of fees between Class Counsel. Accordingly, Class Counsel should not have lost interest on the fee award through this unnecessary delay.

MDMC also argues that Class Counsel should earn interest on the 60-day delay caused by the notice error to class members. Admittedly, this is a more difficult question because, as this Court noted at oral argument, these type of delays routinely occur in class actions. Further, at the December 22, 2006 hearing, the Court reiterated that the 60-day time period was necessary in order to provide notice to putative class members of the Settlement Agreement and an opportunity to review its terms. When this delay was first brought to the Court's attention at the August 28, 2006 Fairness Hearing, Defendants and Class Counsel admitted on the record that this error was inadvertent, due solely to a computer glitch. Similarly, the Court noted that "we all agree that this [delay] was totally unintentional." Transcript of December 22, 2006 Hearing at 51:23-24. On the other hand, the Court notes that but for Snap-on's error, Class Counsel would have been awarded the $13 million in fees much earlier and, as stated above, "[i]nterest compensates attorneys for the delay in receiving payment." McLendon, 872 F. Supp. at 159. MDMC argues that Class Counsel should not pay the price of this delay when it was caused through no fault of their own.

Snap-on characterizes MDMC's request for interest on the fee award during the 60-day period as extraordinary and unsupported. Snap-on argues that it should not be held responsible for hundreds of thousands of dollars of interest due only to an inadvertent notice error. Emphasizing that the Settlement Agreement was carefully crafted, Snap-on notes that a provision for interest on fees was not raised during negotiation and was not ultimately included. Specifically, Snap-on argues that

-13-

there is no provision that allows Class Counsel to claim interest at this time and that the Court lacks equitable power to modify the settlement agreement.  See In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. at 534-535 (holding that "the court is not free to delete, modify or substitute certain provisions of the settlement") (citations omitted).  The settlement agreement provides that the fee award would only be paid by Snap-on "[n]o later than five (5) business days after the last to occur of either (i) Court Approval of the Fee Awards, or (ii) Final Judgment as defined in Section 2.16" (Settlement Agreement, p. 29).  Snap-on takes the position that Class Counsel cannot claim interest before either of these events has occurred.  Further, Snap-on notes that MDMC does not cite any case law supporting the rule that a defendant may be held liable for interest on fees when the delay was due only to an error in the notice procedures.

In response, MDMC argues that it was not Class Counsel's obligation to assume, in negotiating the Settlement Agreement, "that Snap-on was going to screw up."  Transcript of December 22, 2006 Hearing at 50:21-22.  MDMC notes that but for Snap-on's mistake, Class Counsel would have had the $13 million in fees 60 days earlier.

While granting interest on the 60-day delay may be out of the ordinary, in weighing the interest of both sides it is the conclusion of this Court that awarding interest to Class Counsel for this period causes little harm to Snap-on but failure to do so would cause significant harm to Class Counsel.  Further, if the Court denied Class Counsel's request for the interest accrued during the 60-day delay, Class Counsel would suffer substantial harm through no fault of their own.  Accordingly, Snap-on is ordered to pay Class Counsel for the interest which would have accrued on the fee award during the 60-day delay caused by Snap-on's error.

-14-

**III.    CONCLUSION**

For the reasons expressed above, the Court **denies** the following expenses submitted by M&K: requested reimbursement for services rendered by Marguerite Broussard, Esq., Richard Fiederlein, for one-half of the fees owed to Anthony Granese, for the costs of Michael Marron's deposition transcript, for extra costs in the form of disbursements in the amount of $3,027.03, and for the costs of website maintenance.  This Court also **denies** MDMC's request for reimbursement for one-half of the fees owed to Anthony Granese.  The Court **grants** MDMC's request for reimbursement of the payment to valuation expert.  The Court **grants** interest on the fee award for the six-day delay following this Court's October 27, 2006 order and interest on the fee award for the sixty-day delay following the August 28, 2006 fairness hearing.  An appropriate Order accompanies this Opinion.

    S/ Dennis M. Cavanaugh  
Dennis M. Cavanaugh, U.S.D.J.

Date:          January   5  , 2007  
Original:     Clerk's Office  
Cc:            All Counsel of Record  
                The Honorable Mark Falk, U.S.M.J.  
                File